IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **JAMES HERMAN FITZGERALD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 7:17-CV-141 |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff James Herman Fitzgerald ("Fitzgerald") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Specifically, Fitzgerald alleges that the ALJ failed to adequately address his limitations with concentration, persistence and pace; failed to properly assess his impairments on a function-by-function basis; and failed to provide sufficient reasons for his credibility analysis. I conclude that substantial evidence supports the ALJ's decision as a whole. Accordingly, I **RECOMMEND DENYING** Fitzgerald's Motion for Summary Judgment (Dkt. No. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 16.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Fitzgerald failed to demonstrate that he was disabled under

1

the Act.[1] <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Fitzgerald filed for SSI on May 14, 2013, claiming that his disability began on January 4, 1998. Administrative Record, hereinafter "R." 184, 217. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 54–85. On October 30, 2015, ALJ Geraldine H. Page held a hearing to consider Fitzgerald's disability claim. R. 32–53. Fitzgerald was represented by an attorney at the hearing, which included testimony from Fitzgerald and vocational expert Asheley Wells. <u>Id.</u>

On December 22, 2015, the ALJ entered her decision analyzing Fitzgerald's claim under the familiar five-step process,[2] and denying Fitzgerald's claim for benefits. R. 9–25. The ALJ

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. <u>See</u> 42 U.S.C. § 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); <u>Taylor v. Weinberger</u>, 512 F.2d 664, 666 (4th Cir. 1975).

2

found that Fitzgerald suffered from the severe impairments of degenerative disc disease of the lumbar spine, seizure disorder, anxiety disorder and depressive disorder. R. 11. The ALJ further found that Fitzgerald had the residual functional capacity ("RFC") to perform light work, except that he can lift and carry no more than 20 pounds occasionally and 10 pounds frequently; stand and walk for no more than 6 hours in an 8 hour workday; sit for no more than 6 hours in an 8 hour workday; occasionally climb ramps and stairs, balance, kneel, stoop, crouch; and frequently, but not constantly, reach overhead with his left upper extremity. R. 14. The ALJ found that Fitzgerald should avoid concentrated exposure to extreme temperatures, excess humidity and pulmonary irritants; should avoid exposure to hazardous machinery, crawling, working at unprotected heights, working on vibrating surfaces, and climbing ladders, ropes or scaffolds. The ALJ found that Fitzgerald is able to understand, remember and carry out simple instructions in repetitive, unskilled work that involves only occasional interaction with the general public and no required driving of automobiles or other moving equipment. Id. The ALJ determined that Fitzgerald had no past relevant work, but could perform jobs that exist in significant numbers in the national economy, such as assembler, packing line worker or garment folder. R. 23–24. Thus, the ALJ concluded that he was not disabled.

Fitzgerald requested that the Appeals Council review the ALJ's decision and on February 24, 2017, the Appeals Council denied Fitzgerald's request for review. R. 1–3. This appeal followed.

## **ANALYSIS**

### **Concentration, Persistence and Pace**

Fitzgerald asserts that the mental limitations set forth in the RFC do not adequately account for his moderate limitations with concentration, persistence and pace. Pl. Br. Summ. J. p.

3

12. Specifically, Fitzgerald alleges that the ALJ did not account for his difficulty staying on task and maintaining concentration, persistence or pace over an 8 hour workday. Pl. Br. Summ. J. p. 14. Fitzgerald also asserts that "simply limiting plaintiff to simple instructions in repetitive, unskilled work with only occasional interaction with the general public without further detailed explanation does not meet the requirements of SSR 96-8p..." Pl. Br. Summ. J. p. 14. See Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). Fitzgerald further argues that the ALJ failed to include his moderate limitations in concentration, persistence, or pace in the hypothetical to the vocational expert. Id. at 16.

SSR 96-8p requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)).

Here, the ALJ's discussion of Fitzgerald's mental limitations satisfies the requirements of SSR 96-8p. The ALJ considered both medical and non-medical evidence in assessing Fitzgerald's RFC and provided the narrative discussion required by the regulations. The ALJ reviewed the history of Fitzgerald's mental health symptoms and his mental health treatment in detail. R. 13–21. The ALJ also reviewed the opinion evidence, including two opinions from state agency psychological consultants and an opinion from consultative physician David Leen Ph.D. R. 21–23. Thus, the ALJ's narrative discussion considering the medical opinions,

Fitzgerald's testimony, and evidence of mental impairment satisfied the requirements of SSR 96-8p. See Taylor v. Astrue, No. 11-cv-32, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012) (noting that while SSR 96-8p requires an ALJ to consider the evidence presented on a function-by-function basis, it does not require the ALJ to produce such a detailed statement in writing, but rather is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions).

Fitzgerald argues that the RFC set forth by the ALJ failed to properly account for his limitations with concentration, persistence and pace. In Mascio v. Colvin the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at 638. The court noted, however, that the ALJ may find that the concentration, persistence or pace limitation would not affect a claimant's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. 780 F.3d at 638; see also Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015). The court found error in Mascio because the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC.

The Mascio decision does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace must always translate into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty of explanation to adequately review the evidence and explain the disability decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence or pace limitation does not affect the claimant's ability to perform simple, unskilled

5

work. The ALJ has the responsibility to address the evidence of record that supports that conclusion, and ensure that the hypothetical presented to the vocational expert includes all of the limitations set forth in the RFC.

The Mascio court relied upon Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011), where the court rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. However, the Winschel court explained that:

> when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. (internal citations omitted). Courts within the Fourth Circuit have come to rely upon Winschel's reasoning to comply with Mascio. See St. Clair v. Colvin, No. 7:13cv571, 2015 WL 5310777, at * 7 (W.D. Va. Sept. 11, 2015) (ALJ properly relied upon the opinion of consultative physician that plaintiff's impairment in concentration, persistence and pace did not prevent him from performing simple, repetitive tasks); Del Vecchio v. Colvin, No. 1:43cv116, 2015 WL 5023857 at * 5 (W.D.N.C. Aug. 25, 2015) (ALJ's reliance upon the opinion of state agency medical consultant that plaintiff could complete simple tasks even with moderate limitations in concentration, persistence, or pace satisfied the explanation necessary to support the RFC limitations); Geisler v. Comm'r, No. SAG-14-2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) (ALJ properly relied on the opinions of state agency physicians that plaintiff's impairment in concentration, persistence or pace does not prevent him from performing simple, spoken instructions and simple routine tasks). Likewise, in Hutton v. Colvin, the court held that a

6

restriction of "unskilled work" accounted for claimant's limitations with concentration, persistence or pace where the ALJ examined the claimant's ability to perform daily activities such as paying bills and counting change in the step 4 analysis, and noted that his treating physicians found that he exhibited good attention, intact memory, logical thought flow, and good immediate and recent memory. 2015 WL 3757204, at *3–5. The court found that these reasons constituted "abundant explanation" for the ALJ's RFC findings regarding the claimant's concentration limitations, and thus, there was no error in the ALJ's conclusion that the claimant could perform unskilled work. Id.

Thus, Mascio reiterates the long-held proposition that substantial evidence in the record must support the limitations contained in the RFC and those limitations must be included in the hypothetical question presented to the vocational expert. An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Here, substantial evidence supports the ALJ's decision that despite Fitzgerald's limitations in concentration, persistence, or pace, he was capable of understanding, remembering and carrying out simple instructions in repetitive, unskilled work that involves only occasional interaction with the general public.

Fitzgerald suffers from depression and anxiety. He testified at the administrative hearing that he has been treated for anxiety since 2013, and was an inpatient at Blue Ridge Behavioral Healthcare for three days in 2006 and treated as an outpatient in 2014. R. 37–39. Fitzgerald

testified that he has trouble remembering and concentrating, which he believes is related to anxiety and medication. R. 46.

On September 8, 2013, Dr. Leen conducted a consultative psychological examination of Fitzgerald. R. 285. Dr. Leen noted that Fitzgerald had been treated with Prozac for depression since a psychiatric hospitalization in 2006, precipitated by a suicide attempt by medical overdose while incarcerated. R. 285–86. Fitzgerald had not had any psychiatric treatment since his release from prison in April 2013. Upon examination, Dr. Leen noted that Fitzgerald was "adequately able to concentrate and persist throughout this examination. His functioning in the areas of attention and concentration, judgment, recall and abstract thinking were estimated on the basis of the detail with which he conveyed his past history and current mental status and on the basis of his answers to several additional questions." R. 286. Dr. Leen diagnosed depressive disorder and anxiety disorder with features of posttauramtic stress and panic disorder. R. 287. He concluded that Fitzgerald is unable to perform complex or challenging work activities with or without additional supervision. Dr. Leen noted:

> From the standpoint exclusively of his psychological functioning and psychiatric symptoms, without regard for his physical/medical conditions, he is currently able to consistently perform the most simple repetitive work activities in a timely and appropriate manner. He is able to maintain reliable attendance in the workplace. He is able to accept instructions from supervisors on a consistent basis. He would be expected to have difficulty dealing affectively with the public in a vocational setting. He is able to complete a normal work week without interruptions resulting from his depressive and anxiety disorder symptoms. He is currently generally able to deal with the usual stresses of competitive work provided he has a well-structured and supportive employment setting.

R. 287.

On September 17, 2013, state agency psychologist Richard Milan, Jr. Ph.D., reviewed Fitzgerald's records and determined that he has a moderate impairment with understanding and remembering detailed instructions, but no impairment with the ability to understand and

remember short and simple instructions. R. 64. He found that Fitzgerald is moderately impaired in his ability to carry out detailed instructions, and work in coordination with or in proximity to others without being distracted by them. R. 65. Dr. Milan found no impairment with the ability to carry out short and simple instructions, maintain attention and concentration for extended periods, or perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. Id. Dr. Milan found that Fitzgerald "would be able to perform simple, repetitive tasks in a timely and appropriate manner given his symptoms." Id. Dr. Milan also found that Fitzgerald can interact adequately with others to complete simple tasks in a setting with low social demands, and "could be able to manage repetitive, simple, routine tasks on a sustained basis." R. 66. Dr. Milan concluded:

> The claimant remains capable of understanding and remembering instructions, concentrating, persisting at work duties to completion, interacting appropriately with people, and adapting to changing activities within the workplace. Evidence indicates that the claimant is able to meet the basic mental demands of competitive work on a regular, ongoing basis- despite the limitations arising from his impairment.

R. 66.

On April 13, 2014, Fitzgerald sought treatment at the emergency room for depression. He reported that he hadn't been taking his Prozac. R. 395. He was diagnosed with depression and medication withdrawal and recommended for an inpatient psychiatric evaluation at Blue Ridge Behavioral Healthcare. R. 397. On April 14, 2014, Fitzgerald had a psychiatric evaluation at Blue Ridge Behavior Healthcare and was diagnosed with severe major depression. R. 451. He was prescribed Prozac and recommended for individual and group therapy with continued monitoring. R. 453.

On February 25, 2014, state agency physician Howard Leizer, Ph.D., reviewed Fitzgerald's records and agreed with Dr. Milan's conclusion that Fitzgerald retains the capacity

9

and capability to understand and remember 1–3 step instructions without significant interference from symptoms, can perform simple, repetitive tasks in a timely and appropriate manner, can interact adequately with others to complete simple tasks in a setting with low social demands, and can manage repetitive, simple, routine tasks on a sustained basis. R. 81–83.

In August 2014, Fitzgerald began receiving mental health treatment with Tamara Baldwin, F.P.M.H.N.P.-B.C. R. 564. Fitzgerald reported that he did not like crowds and was nervous all the time. Id. Fitzgerald was oriented, was able to concentrate and stay focused during the encounter, had intact memory, linear thought process, flat affect, paranoid expression, lethargic and sad appearance and depressed mood. R. 565. Baldwin assessed depression with anxiety and posttraumatic stress disorder, and prescribed Xanax. R. 566. Fitzgerald returned to Baldwin in October 2014, and reported that medication helped some. R. 559. Fitzgerald's affect was appropriate, but he had an increase in depression from recent stressors. Id. Fitzgerald saw Baldwin in January 2015, and reported the recent death of his daughter. R. 542. Baldwin diagnosed moderately severe depression, and noted that Fitzgerald was oriented, had proper concentration and focus, had a flat affect, intact memory and depressed mood. R. 543. On March 13, 2015, Baldwin treated Fitzgerald and noted that his depression improved. R. 539. Ms. Baldwin continued Fitzgerald's medications and provided education on preventing a relapse of depression. R. 540.

In step three of her decision, the ALJ reviewed Fitzgerald's treatment records and determined that he had a mild restriction in activities of daily living, moderate difficulties with social functioning, and moderate difficulties with concentration, persistence or pace. R. 12–13. The ALJ noted that Fitzgerald reported that he can follow written instructions better than spoken instructions but loses attention quickly and likes to read but has trouble concentrating. R. 13.

10

The ALJ also noted that Fitzgerald was able to adequately concentrate and persist throughout his consultative psychological examination; and that while his symptoms prevent him from understanding, remembering and carrying out detailed or complex instructions, he is able to understand, remember and carry out simple instructions in repetitive, unskilled work. Id.

In step four of the decision, the ALJ reviewed Fitzgerald's testimony, the medical evidence and the opinion evidence in detail. R. 14–23. The ALJ noted that Fitzgerald has taken medications for mental symptoms, but his mental status examination findings have been largely normal, aside from occasional flat affect and abnormalities of mood. R. 21. The ALJ discussed the psychological reports of Drs. Leen, Milan and Leizer in detail. R. 22–23. The ALJ gave the opinions of Drs. Milan and Leizer significant weight, finding them to be consistent with Fitzgerald's treatment notes and his conservative course of treatment. R. 22. The ALJ also considered the opinion of Dr. Leen and gave it some weight, finding it consistent with Fitzgerald's mental status examination findings, and his reports of panic attacks and difficulty dealing with crowds. The ALJ noted that Dr. Leen did not define his finding that Fitzgerald needed "a well-structured and supportive employment setting." The ALJ rejected any need for additional structure and support in Fitzgerald's work setting because his course of mental health treatment has been routine, he has been maintained on the same medications and has not required a lengthy inpatient treatment. The ALJ stated, "[h]is mental health treatment notes do not indicate a need for greater structure or support than is customary in a competitive work environment." R. 23.

When presenting hypothetical questions to the vocational expert during the administrative hearing, the ALJ included a hypothetical individual who was able to "understand, remember, and carry out simple instructions referred to in some places as one to three step, but

11

let's just say simple instructions, and repetitive, unskilled work that involves only occasional interactions with the general public…" R. 51. The vocational expert testified that such an individual could perform jobs in the national economy such as assembler, packing line worker and garment folder. R. 51–52.

Unlike in Mascio, the court here is not left to guess at the ALJ's decision-making process. See Gautreau v. Colvin, No. 2:15CV81, 2016 WL 1314314, at *9–10 (E.D. Va. Feb. 26, 2016), report and recommendation adopted, No. 2:15CV81, 2016 WL 1298122 (E.D. Va. Mar. 31, 2016), aff'd sub nom. Gautreau v. Berryhill, No. 16-1628, 2017 WL 1423297 (4th Cir. Apr. 21, 2017). Drs. Leen, Milan and Leizer found that despite Fitzgerald's moderate impairment with concentration, persistence or pace, he was capable of completing short, simple tasks and sustaining a regular work schedule and functioning as the job required. The ALJ accounted for Drs. Leen, Milan and Leizer's recommendations by limiting Fitzgerald to work with simple instructions in repetitive, unskilled work that involves only occasional interaction with the general public. Dr. Leen found that Fitzgerald could consistently perform simple repetitive work activities in a timely and appropriate manner, and could complete a normal work week. R. 287. Likewise, Drs. Milan and Leizer found that Fitzgerald could understand and remember directions, concentrate, persist at work duties to completion, and meet the basic mental demands of competitive work on a regular ongoing basis. R. 66, 81–83. Indeed, no reviewing, consultative or treating mental health provider found that Fitzgerald's impairment prevented him from performing repetitive, unskilled work with simple instructions, despite his impairment with concentration, persistence or pace.

The mental health physicians' conclusions that despite his moderate impairment with concentration, persistence and pace, Fitzgerald can perform repetitive, unskilled work with

simple instructions in a competitive work environment provide the logical bridge to support the RFC determined by the ALJ. See Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017) (Opinions of two doctors that claimant can perform simple routine tasks despite moderate impairment in concentration, persistence and pace provided substantial support for ALJ's RFC). This is not a situation where the ALJ determined that Fitzgerald's impairment with concentration, persistence and pace was accommodated by simple, unskilled work without further explanation. Fitzgerald's ability to concentrate, to persist and to keep a certain pace was addressed by Drs. Leen, Milan and Leizer, and their conclusions in this regard were discussed and adopted by the ALJ.

Fitzgerald asserts that the ALJ erred by rejecting Dr. Leen's statement that Fitzgerald needed "a well-structured and supportive employment setting."[3] Pl. Br. Summ. J. p. 14. However, the ALJ provided an explanation for her decision not to adopt this finding, not only because it is vague and undefined, but also because it is contradicted by Fitzgerald's routine mental health treatment and his success with medication management. Thus, the ALJ provided sound reasoning to support her decision to reject this particular finding by Dr. Leen, and

---

[3] During oral argument with this court, counsel for Fitzgerald asserted that the ALJ should have obtained additional information from Dr. Leen as to the meaning of his statement "well-structured and supportive employment setting," because the ALJ has a duty to develop the record. However, the ALJ's duty to develop the record is discharged so long as the "record is adequate to make a determination regarding a disability claim." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000). "The regulations require only that the medical evidence be 'complete' enough to make a determination regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity." Kersey v. Astrue, 614 F.Supp.2d 679, 693–94 (W.D. Va. 2009) (citing 20 C.F.R. §§ 404.1513(e) and 416.913(e)). Therefore, the inquiry in determining "whether the record is adequate to support a judicious administrative decision" centers on whether there are "evidentiary gaps" that prejudice the rights of the claimant. Blankenship v. Astrue, No. 3:11-cv-5, 2012 WL 259952, at *13 (S. D.W. Va. Jan. 27, 2012) (citing Marsh v. Harris, 632 F.2d 296, 300 (4th Cir.1980)). No such evidentiary gaps exist here. The record before the ALJ contained multiple opinions with regard to Fitzgerald's mental limitations and functional capacity. Further, the ALJ considered Dr. Leen's statement and, despite its ambiguity, found that Dr. Leen's statement was contradicted by Fitzgerald's mental health treatment records and his success with medication management. As a fact-finder, it is within the ALJ's province to evaluate the record and weigh the relative worth of the evidence, including opinion evidence, as a necessary part of making a disability decision. See Stevens v. Colvin, No. 6:14-cv-21, 2015 WL 5510928, at *15 (W. D. Va. Sept. 16, 2015).

Fitzgerald's arguments simply disagree with the ALJ's conclusion. Overall, I find that the ALJ's decision with regard to Fitzgerald's mental limitations is supported by substantial evidence.

**Function-by Function Analysis**

Fitzgerald asserts that the ALJ failed to consider how his impairments affect his ability to work on a function by function basis, and specifically failed to consider Fitzgerald's inability to maintain a static work posture, his manipulative limitations or the frequency of his migraine headaches. Pl. Br. Summ. J. p. 20–22.

A function by function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p. The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two

residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's opinion meets the standards set by SSR 96-8p. The ALJ's findings include a detailed summary and analysis of Fitzgerald's impairments, medical records, testimony, and opinion evidence. The ALJ discusses Fitzgerald's symptoms, his resulting limitations, the medical evidence, the medical opinions, Fitzgerald's testimony, his credibility, and conflicting medical evidence. R. 14–23. The ALJ noted that Fitzgerald claims to be disabled due to grand mal seizure disorder; however, the medical evidence did not document significant treatment for seizures. R. 21. Indeed, in April 2014, Fitzgerald denied having a seizure since 2006. R. 449. The ALJ noted that Fitzgerald's treatment records show minimal treatment during incarceration from 2010-2012, and the majority of his treatment thereafter was for back pain. Id. The ALJ considered that Fitzgerald's physical examinations reflect low back tenderness, mildly limited range of motion and paraspinal muscle spasm, but normal neurological findings, including normal gait. Id. The ALJ also found no evidence to support Fitzgerald's claim of lower extremity nerve damage due to a past injury. The ALJ noted that Fitzgerald had a number of accidental injuries, and the treatment notes regarding those reflect greater daily activities than Fitzgerald reported, such as climbing a ladder and walking a dog. Id. The ALJ considered Fitzgerald's poor work history, which suggests that his inability to work is not entirely due to his impairments.

The ALJ also considered the opinion evidence from state agency medical consultants that Fitzgerald can perform a range of light work (R. 62–64, 79–82) which he gave great weight. R. 21–22. The ALJ considered the consultative opinion of William Humphries, M.D. (R. 274–

77), and included greater restrictions in the RFC than those recommended by Dr. Humphries. R. 16. The ALJ discussed Fitzgerald's ability to perform sustained work activities on a daily basis and described the amount of each activity he could perform based on the evidence in the case. R. 14. SSR 96–8p, 1996 WL 374184, at *7. I am not left to guess about how the ALJ arrived at her conclusions. Thus, the ALJ satisfied her responsibility under SSR 96-8p.

**Credibility[4]**

Fitzgerald also asserts that the ALJ's reasons for her finding that Fitzgerald's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible are not supported by substantial evidence. Pl. Br. Summ. J. p. 23–24. Fitzgerald's subjective allegations of pain and limitations are not conclusive. Rather, under the two-step credibility analysis, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Fitzgerald met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ must then evaluate the intensity and

---

[4] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7p when it ruled in SSR 16-3p that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3p at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3p was issued after the ALJ's consideration of Fitzgerald's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's "credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking"). However, I note that the methodology required by both SSR 16-3p and SSR 96-7p, are quite similar. Under either, the ALJ is required to consider Fitzgerald's report of his own symptoms against the backdrop of the entire case record; in SSR 16-3p, this resulted in a "credibility" analysis, in SSR 16-3p, this allows the adjudicator to evaluate "consistency."

persistence of the claimed symptoms and their effect upon Fitzgerald's ability to work. Id. at 594–95. If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P (superseded by SSR 16-3P, (March 28, 2016)).

"[T]he ALJ must 'build an accurate and logical bridge from the evidence to his conclusion that [the claimant's] testimony was not credible…'" Brown v. Comm'r, 873 F.3d at 269 (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). In Brown, the Court held that the ALJ erred by discounting the claimant's credibility based upon daily activities without acknowledging the limited extent of those activities as described by Brown or explain how those activities showed that he could sustain a full-time job. Id. at 269. The Court also found that the ALJ erroneously relied upon his own observations and medical judgments in finding that Brown's pain was not as limiting as he claimed because he could sit through the ALJ's hearing, take a psychological test and manage his own money. Id. at 271.

Here, the ALJ followed the required two step process and determined first that there is an underlying medically determinable physical impairment(s) that could reasonably be expected to produce Fitzgerald's symptoms, such as pain. R. 21. See SSR 96–7p, at *1. The ALJ set forth Fitzgerald's subjective complaints about the intensity, persistence and limiting effects of his symptoms in detail in his opinion. R 14–15. She noted that Fitzgerald testified that he has a couple of petit mal seizures per week and one or two grand mal seizures per week; he uses a walker to help with balance; he has headaches three to four times a week; he is unable to straighten his left arm all the way out or reach overhead with his left arm, and he has difficulty concentrating. R. 15. After a review of Fitzgerald's treatment records and allegations of disability, the ALJ stated:

17

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

R. 21. The ALJ outlined her reasons for this determination, noting that Fitzgerald testified that his seizure disorder and anxiety kept him from working, but most of his treatment was for low back pain. Id. The ALJ noted that Fitzgerald had tenderness in his low back, mildly limited range of motion and paraspinal muscle spasm, but his neurological findings were largely normal, including normal gait. The ALJ also noted no discussion of surgery in the record, and no evidence in the record to support Fitzgerald's testimony that he has lower extremity nerve damage due to a past injury. Id. The ALJ noted that despite reporting that he was not licensed to drive due to seizures, he reported driving in his medical records. The ALJ also noted that Fitzgerald's records reflect that he testified he had not experienced a seizure since 2006, and that the records do not document any significant treatment for seizures since his filing date. As the ALJ noted, "[o]ne would expect documentation of various treatment efforts if the claimant's seizures were as frequent as he listed." Id. The ALJ noted that Fitzgerald's medical records reflect a number of accidental injuries, but the descriptions of those injuries reflect greater activities than Fitzgerald indicates, such as climbing a ladder and walking a dog. R. 21. The ALJ also found that Fitzgerald's poor work history, with no earnings since 1989 did not augment his credibility, and the medical record as a whole does not support greater limitation than is described in the RFC. Id. The ALJ concluded that the "credibility of [Fitzgerald's] allegations is weakened by inconsistencies between the extent of his allegations and the objective medical evidence, which pertains mostly to back complaints." R. 23.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Fitzgerald's subjective allegations of his disabling pain, symptoms, and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014).

In this case, the ALJ found that Fitzgerald's statements regarding the severity of his limitations and pain were not wholly credible because they were not supported by the objective medical evidence, his treatment history, and his daily activities.  The ALJ's opinion includes a detailed consideration of Fitzgerald's medical history along with Fitzgerald's own allegations. A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Substantial evidence supports the ALJ's determination that Fitzgerald's testimony is only partially credible, and that Fitzgerald is capable of performing work at the level stated in the ALJ's opinion.

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, I recommend affirming  the Commissioner's decision, **GRANTING** the defendant's motion for summary judgment, and **DENYING** Fitzgerald's motion for summary judgment.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United

States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

    Enter:  May 9, 2018

    *Robert S. Ballou*

    Robert S. Ballou
    United States Magistrate Judge